EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section
FRANK D. KORTUM
Assistant United States Attorney
Asset Forfeiture Section
California Bar No. 110984
Federal Courthouse, 14th Floor
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5710
Facsimile: (213) 894-7177
E-mail: Frank.Kortum@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALL MONIES, INCLUDING INSURANCE BENEFITS AND INTEREST, PAYABLE PURSUANT TO CLAIM NUMBER 1179068 UNDER MINNESOTA LIFE INSURANCE GROUP POLICY NO. 33772-G, FOR BASIC LIFE INSURANCE COVERAGE IN THE AMOUNT OF $25,000, AND SUPPLEMENTAL LIFE INSURANCE COVERAGE IN THE AMOUNT OF $250,000,<br><br>Defendants. | NO. 5:16-CV-1129<br><br>VERIFIED COMPLAINT FOR FORFEITURE<br><br>[18 U.S.C. § 981(a)(1)(G)(iii)]<br><br>[F.B.I.] |

The United States of America brings this claim against the defendants all monies, including insurance benefits and interest, payable pursuant to claim number 1179068 under Minnesota Life Insurance group policy no. 33772-G, for basic life insurance coverage in the amount of $25,000, and supplemental life insurance coverage in the amount of $250,000 (the "Policy Benefits"), and alleges as follows:

## JURISDICTION AND VENUE

1. This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(G)(iii).

2. This court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395(a).

## PERSONS AND ENTITIES

4. The plaintiff is the United States of America.

5. The defendants are all monies, including insurance benefits and interest, payable pursuant to claim number 1179068 under Minnesota Life Insurance group policy no. 33772-G, for basic life insurance coverage in the amount of $25,000, and supplemental life insurance coverage in the amount of $250,000.

6. The interests of Rafia Farook ("Rafia") in the Policy Benefits may be adversely affected by these proceedings.

7. The defendant Policy Benefits, once taken into plaintiff's custody pursuant to the arrest warrant in rem, shall be held by the United States Marshals Service, where they shall remain subject to this court's jurisdiction during the pendency of this action.

SUMMARY OF FACTUAL AND LEGAL BASES FOR FORFEITURE

8. Syed Rizwan Farook ("Farook") was one of the perpetrators of a terrorist attack that occurred on December 2, 2015 in San Bernardino, California, in the Central District of California (the "San Bernardino Attack"). During the course of the San Bernardino Attack, Farook died in a shootout with law enforcement. Investigation has revealed that Farook had been radicalized and aspired to engage in terrorist actions beginning no later than 2011. Starting in approximately 2011, Farook and a co-conspirator, Enrique Marquez Jr. ("Marquez"), made plans to conduct terrorist attacks in Riverside County, California. As part of that planning, Farook and Marquez acquired weapons and explosive powder to facilitate the attacks and engaged in training to carry out the attack plans. In 2012 and 2013, after Farook had initiated plans to conduct the attacks, he obtained the life insurance coverage described above. Farook named Rafia, his mother, as the primary beneficiary of that coverage.

9. Plaintiff alleges that the Policy Benefits are assets derived from a Federal crime of terrorism, as that term is defined at 18 U.S.C. § 2332b(g)(5). Specifically, in carrying out the San Bernardino Attack, Farook intended to influence or affect the conduct of government by intimidation or coercion, or to retaliate against government conduct; and violated 18 U.S.C. §§ 2332f (prohibiting the delivery of an explosive device to a place of public use or a state or government facility, with the intent to cause death or serious bodily injury, or extensive destruction of such a place or facility) and 2339A (providing material support to terrorists). The Policy Benefits are

therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(G)(iii).

FACTS SUPPORTING FORFEITURE

Farook's Plans for Violent Jihad

10. Beginning at an unknown time, but no later than November 14, 2011, and continuing through to December 2, 2015, Farook and his co-conspirators (specifically, his wife, Tashfeen Malik ("Malik") and, at times, Marquez), engaged in the planning of and preparation to carry out terrorist attacks against the United States, its citizens and their property. Farook's plans culminated in the San Bernardino Attack on December 2, 2015, carried out by Farook and Malik.

Farook and Marquez Plan Terrorist Attacks

11. Farook conspired with Marquez to acquire firearms and bomb-making components, which Farook and Malik ultimately used in the San Bernardino Attack. Due in part to his involvement in the acquisition of those firearms and bomb-making components, Marquez has been charged with violations of 18 U.S.C. § 2339A(a) (Conspiring to Provide Material Support to Terrorists); 18 U.S.C. § 922(a)(6) (Making a False Statement in Connection with the Acquisition of Firearms); and 18 U.S.C. § 1546 (Fraud and Misuse of Visas, Permits, and Other Documents). *United States v. Marquez*, EDCR 15-93-JGB.

12. Farook introduced Marquez to Islam in late 2005. In 2007, Marquez converted to Islam. Farook subsequently introduced Marquez to radical Islamic ideology, which included discussion of the extremist views of the now-deceased imam and

Islamic lecturer Anwar al-Aulaqi,[1] who was an advocate of violent jihad, a term used in this context to connote a religious war carried out by Muslims against those who do not believe in Islam. Violent jihadists believe that their death while furthering jihad will result in their martyrdom. One of the goals of violent jihad is the pursuit of a holy war against the United States in retaliation for government policies, such as the support of Israel.

13. In approximately 2011, Farook and Marquez began making plans to commit terrorist acts in the southern California area. They were inspired by the acts of Muslim Army Major Nidal Hasan, who shot and killed 13 people and injured more than 30 at Fort Hood, Texas on November 5, 2009. Marquez and Farook also

[1] Anwar al-Aulaqi has been identified as a propagandist and attack planner for Al-Qa'ida in the Arabian Peninsula. According to the Combatting Terrorism Center article "Anwar al-`Awlaqi: Profile of a Jihadi Radicalizer" by Christopher Heffelfinger, dated March 2010,

> Al-`Awlaqi has already served to radicalize a sizeable number of young Muslims, including Americans and other English-speaking Muslims who aspired to learn more about jihad and its permissibility according to Shari`a (Islamic law). He has translated and discussed famous Arabic-language tracts on jihad in his lectures and articles, as well as hadith stories and other matters of faith and doctrine. . . . What makes al-`Awlaqi unique is his role in the radicalization process, serving as a critical link that takes dedicated students of Salafi-jihadi ideology from an inspirational to an operational mode. Accordingly, al-`Awlaqi's greatest significance lies in his ability to function as a motivational speaker, demonstrating a proven talent to drive believers into action.

CTC Sentinel, March 2010, Volume 3 Issue 3 (available at https://www.ctc.usma.edu/posts/anwar-al-awlaqi-profile-of-a-jihadi-radicalizer).

studied other terrorist shootings, including the 2011 attack in Oslo, Norway, where a Norwegian man set off bombs in a government center, killing seven people, before heading to an island summer camp for young members of the Labor Party and killing at least 80 others. During this period, Marquez had ties to a group of jihadists ("California jihadists") who were arrested in 2012 when they attempted to travel to Afghanistan to join Al Qa'ida.

14. Farook provided Marquez with radical Islamic materials in 2011. Marquez spent time at Farook's residence, where he read materials, listened to lectures, and watched videos involving radical Islamic content. For example, Marquez reviewed a publication by Al-Qa'ida in the Arabian Peninsula ("AQAP"); content by Al-Qa'ida founder Abdullah Azzam; and videos produced by the Al-Qa'ida affiliate Al-Shabaab. In August of 2011, Farook told Marquez of his interest in joining AQAP in Yemen.

15. In 2011, Marquez and Farook discussed the prospect of becoming a "shahid." Shahid (or Shaheed) is an Arabic term meaning "witness" and is also used to denote a martyr. In this context, it is believed to refer to the honorific term to denote a person who has died during violent jihad.

16. Marquez and Farook agreed in or about October 2011 to acquire firearms to execute their planned terrorist attacks. In late 2011 and early 2012, on two occasions, Marquez purchased firearms, namely, AR-15 rifles, for Farook from two separate stores of a local sporting goods retailer. Specifically, on November 14, 2011, Marquez purchased a Smith & Wesson, model

M&P-15 Sport, 5.56 caliber rifle, bearing serial number SN77510 (the "Smith & Wesson Rifle"). On February 22, 2012, Marquez purchased a DPMS, model A-15, 5.56 caliber rifle, bearing serial number FH108002 (the "Oracle Rifle"). Marquez and Farook subsequently purchased ammunition and gear. They also visited gun ranges to practice shooting and train for their violent attacks.

17. In approximately 2012, Marquez purchased a bottle of explosive powder in furtherance of his and Farook's plans to create bombs and commit mass killings. Marquez gave the bottle of explosive powder to Farook.

Farook and Malik Marry and Make Plans to Engage in Violent Jihad

18. After the arrest of the California jihadists in 2012, Marquez distanced himself from Farook. In 2013, Farook began communicating online with Malik, who was living in Saudi Arabia. Farook and Malik married in 2014 in Saudi Arabia. Prior to their marriage, Farook and Malik exchanged online communications in which they discussed jihad and martyrdom. After getting married, Farook returned to the United States with Malik, and they lived with Rafia. Initially, Farook and Malik lived in Riverside, California, with Rafia and other members of Farook's family. In May 2015, Farook, Malik, and Rafia moved together to a two-bedroom apartment in Redlands, California, where they lived until the San Bernardino Attack.

The San Bernardino Attack

19. On December 2, 2015, Farook and Malik carried out the San Bernardino Attack:

a. At approximately 9:00 a.m., Farook entered the Inland Regional Center in San Bernardino, California (the "IRC") to attend a work-related event and placed an item on a table. At approximately 10:40 a.m., Farook left the event while it was still in progress.

b. At approximately 11:00 a.m., at least one masked individual dressed in black tactical gear began shooting at people, both outside and inside the IRC. Plaintiff alleges that Farook was one of the shooters in the attack, as part of which, fourteen people were killed and at least twenty-two other people were injured. Farook left the scene in a black sports utility vehicle (the "SUV") that he had rented.

c. Minutes after the start of the San Bernardino Attack, Malik pledged allegiance in a Facebook post to a terrorist organization known as the Islamic State of Iraq and the Levant ("ISIL"). Her post stated "We pledge allegiance to Khalifa bu bkr al bhaghdadi al quraishi." Al Bhaghadadi is the leader of ISIL.

d. At the IRC, law enforcement found a remotely controlled improvised explosive device ("IED") on a table. This IED was composed of three galvanized steel pipe bombs. The three pipe bombs had a green wire connected to them and were attached to a remote-control toy car to create a radio-controlled IED. At the time law enforcement found it, the IED was armed and ready to detonate. Plaintiff alleges that the IED was delivered to or placed at the IRC by Farook.

e. Later that day, law enforcement officers located and pursued the SUV that had been seen leaving the IRC. During the pursuit, the vehicle's occupants, later determined to be Farook and Malik, fired several rounds of ammunition at law enforcement officers.

f. The SUV eventually stopped, and Farook and Malik continued to fire ammunition rounds at law enforcement officers, who returned fire. Both Farook and Malik died at the scene. They were wearing clothing matching the description of the shooters at the IRC, and they were in possession of the weapons used during the attack at the IRC. Specifically, after the shootout, law enforcement officers recovered four firearms and thousands of rounds of 5.56 mm ammunition near the SUV. The four firearms included the Smith & Wesson Rifle, the Oracle Rifle, and two semi-automatic handguns, which belonged to Farook. Subsequent forensic testing of the expended 5.56 mm ammunition casings found at the IRC with those found near the SUV determined that the Smith & Wesson Rifle and the Oracle Rifle were used both at the IRC and in the shootout with law enforcement. At the scene of the shootout, law enforcement also uncovered the remote control for the IED found at the IRC.

g. Between the time of the shooting at the IRC and the shootout with law enforcement officers that resulted in their deaths, Farook and Malik did not flee the area. Instead, they drove around the areas near the IRC and their residence in the SUV.

h. A subsequent search of the residence that Farook occupied with his mother Rafia and Malik resulted in the discovery of several pieces of steel pipe, some of which were plugged on both ends with green wire attached. Also discovered were bomb-making equipment and components, including various types of tools, soldering equipment for the manufacture of electrical circuits, and remote-control toy cars. Investigators also found the bottle of explosive powder that Marquez had purchased and given to Farook to build IEDs for use in their terrorist attack planning. Subsequent forensic testing by the Federal Bureau of Investigation's Laboratory, Explosives Unit, determined the explosive powder seized at Farook's residence to be chemically and physically consistent with the explosive powder recovered from the IED placed at the IRC on December 2, 2015. In addition, investigators found a copy of "Defense of Muslim Lands," by Abdullah Azzam, a mentor and early influencer of Osama bin Laden, and what appeared to be pages of supplications and prayers to Mujahideen.

Farook's Acquisition Of The Insurance Coverage

20. During the period that Farook and Marquez were planning terror attacks, Farook became an employee of the County of San Bernardino. On or about January 28, 2012, as part of his employee benefits, Farook acquired non-contributory life insurance coverage with Minnesota Life Insurance Company ("Minnesota Life") with a $25,000 death benefit. On July 13, 2013, Farook successfully obtained supplemental contributory life insurance coverage from Minnesota Life with a $250,000

death benefit. FAROOK designated Rafia as the primary beneficiary for all such coverage. Farook's death during the San Bernardino Attack triggered the payment of the Policy Benefits, and those benefits are the defendant assets here.

21. Based on the above, plaintiff alleges that the Policy Benefits were derived from a Federal crime of terrorism against the United States, citizens or residents of the United States, or their property, rendering them subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(G)(iii). Specifically, in carrying out the San Bernardino Attack, Farook committed violations of 18 U.S.C. §§ 2332f(a)(1) and 2339A with the intent to influence or affect the conduct of government by intimidation or coercion, and/or to retaliate against government conduct.

WHEREFORE, plaintiff United States of America prays that:

(a) due process issue to enforce the forfeiture of the defendant Policy Benefits;

(b) due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

(c) that this Court decree forfeiture of the defendant Policy Benefits to the United States of America for disposition according to law; and

/ / /

/ / /

/ / /

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

DATED: May 31, 2016

EILEEN M. DECKER
United States Attorney
LAWRENCE S. MIDDLETON
Assistant United States Attorney
Chief, Criminal Division
STEVEN R. WELK
Assistant United States Attorney
Chief, Asset Forfeiture Section

/s/ Frank D. Kortum
FRANK D. KORTUM
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

VERIFICATION

I, Jessie T. Murray hereby declare that:

1. I am a special agent with the Federal Bureau of Investigation and am the case agent for the forfeiture matter entitled United States of America v. All Monies, Including Insurance Benefits And Interest, Payable Pursuant To Claim Number 1179068 Under Minnesota Life Insurance Group Policy No. 33772-G, For Basic Life Insurance Coverage In The Amount Of $25,000, And Supplemental Life Insurance Coverage In The Amount Of $250,000.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed May 31st, 2016 in Tustin, California.

Jessie T. Murray

JESSIE T. MURRAY