UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION-RIVERSIDE

- - -

HONORABLE JESUS G. BERNAL, JUDGE PRESIDING

- - -

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ALL MONIES INCLUDING INSURANCE BENEFITS INCLUDING INTEREST, PAYABLE PURSUANT TO CLAIM NO. 1179068 UNDER MINNESOTA LIFE INSURANCE GROUP POLICY NO. 33772-G, FOR BASIC LIFE INSURANCE COVERAGE IN THE AMOUNT,<br><br>Defendant. | No. EDCV 16-1129 JGB |

REPORTER'S TRANSCRIPT OF PROCEEDINGS

Riverside, California

Friday, August 5, 2016

10:15 a.m.

PHYLLIS A. PRESTON, CSR, FCRR
Federal Official Court Reporter
United States District Court
3470 Twelfth Street
Riverside, California 92501
stenojag@aol.com

APPEARANCES:

For the Plaintiff:

OFFICE OF THE UNITED STATES ATTORNEY
BY: **STEVEN WELK**
**FRANK KORTUM**
Assistant United States Attorneys
312 North Spring Street, Suite 1200
Los Angeles, California 90012

FRIDAY, AUGUST 5, 2016; RIVERSIDE, CALIFORIA

-o0o-

THE CLERK: Calling Case No. EDCV 16-119-JGB, USA vs. All Monies, Including Insurance Benefits, Including Interest Payable Pursuant to Claim No. 1179068 under Minnesota Life Insurance Policy No. 33772-G, et cetera. 10:15

Counsel, please state your name for the record.

MR. WELK: Good morning, Your Honor. Assistant U.S. Attorney Steven R. Welk for the Government. Also with me at counsel table is AUSA Frank Kortum. 10:15

THE COURT: Mr. Kortum and Mr. Welk, good morning to you.

So I wanted just to talk a little bit about the basis for your application for the warrant and what your perception is of the necessary causal link that must be established both 10:15 at this point and then eventually. There seems to be from your brief some contradictory language regarding what you think should be the causal connection. In particular at page 3 of your supplemental brief you say that all that is required for a forfeiture under Title 18, United States Code, 10:16 Section 981(a)(1)(G)(iii), that's at page 3, middle of the page, you state that all that is required is that there be some -- or quote, *Some causal relationship exists between the offense and the asset.*

In the sentence immediately thereafter, although you 10:16

say, quote, *Here, as the verified complaint demonstrates, there is probable cause to believe that the policy benefits would generate as a direct result of the San Bernardino Attack, as he had planned, in that Farook died in the course of committing that attack.* 10:16

So you seem to imply by that second sentence that his intent or plan or perhaps anticipation or expectation that the assets would be generated as a result of his offense plays some role in the causal analysis. Is that your position?

MR. WELK: Should I take the lectern? 10:17

THE COURT: Yes.

MR. WELK: It plays a role in the causal connection in a factual context. In other words, the reason it plays a role, his intent plays a role, because his intent caused the events to occur and led to -- 10:17

THE COURT: There's two different intents, at least, there. One intent is to commit the attacks which is separate than generating the proceeds.

MR. WELK: Correct, absolutely, yes.

THE COURT: And there's the second intent to perhaps 10:17 generating or at least expecting to generate the proceeds by committing the attack.

MR. WELK: Correct.

THE COURT: Which one are you referencing?

MR. WELK: I'm referencing the first intent, the 10:17

intent to commit the acts.

THE COURT: Very well.

MR. WELK: Regardless of what his intent was in terms of generating -- whether he intended to cause the policy benefits to become payable that day by dying in the course of the attack is not relevant to either the probable cause determination or the ultimate merits determination. The only intent that's required is that he intended to commit the underlying criminal act. 10:18

THE COURT: Very well. So assume this set of facts: He intends to commit the terrorist act, he's apprehended. Ten years later he's executed as a result of his act. Would this still be an asset that is derived from the criminal act? If his intent doesn't matter, then that would be some causal connection, correct? 10:18 10:18

MR. WELK: That's correct. The question is whether the -- so he is prosecuted, convicted, and then ultimately --

THE COURT: He intends to commit the act. He commits the act, okay, but he has no intent to generate the benefit. Ten years later he's executed. The benefits are generated. 10:19 Under your recitation of the causal connection that's necessary that would come under the purview of Section 981.

MR. WELK: I think that's probably true, Your Honor, because the payment of the benefits would still be ultimately derived from the original underlying criminal act. 10:19

THE COURT: Okay. So another scenario. He commits the act, people die. They have life insurance policies. Those life insurance policies then become due and there are assets derived from the terrorist act, from your view.

MR. WELK: Correct. 10:19

THE COURT: Congress intended by enacting 981 that you could go after the policy benefits generated by the victim's death. That's what you're telling me.

MR. WELK: Congress intended that those monies should
be subject to seizure and potentially subject to forfeiture, 10:19
but there is a whole panoply of defenses available to the recipients of those monies that, in my view, would likely prevent the forfeiture of the money. And there is one in particular and that is the excessive fines analysis.

THE COURT: And the innocent victim analysis. 10:20

MR. WELK: There's some difficulty with the innocent victim analysis because of the statutory requirements of the innocent owner defense. This would be an instance where the claimant's right to the asset arose after the commission of the
criminal act. And the standard that's applicable, the innocent 10:20
owner standard under the statute, is in order to prevail on that statute the claimant has to show that they were a bona fide purchaser for value without reason to believe that the property was subject to forfeiture.

The question that comes up in that setting is the 10:20

person who's set to -- let's assume that it's a victim who has died and there is insurance proceeds payable. The first question would be, who paid for that insurance policy. If the beneficiary of the policy actually paid the premiums, then they would be a bona fide purchaser for value without reason to believe that the money was subject to forfeiture. They would actually prevail under the innocent owner statute. They would win. 10:21

THE COURT: So you also cite some authority for that Congress intended, as I believe it, to deter terrorist acts which I think is probably correct, right? 10:21

MR. WELK: Absolutely.

THE COURT: So how does this -- how would this deter criminal acts? Assume that Mr. Farook didn't even know he had the insurance policy and then the process become due. How does that fit with the intent of the statute which is to deter a terrorist act? 10:21

MR. WELK: Because -- well, again, the idea behind the statute, the authority, the forfeiture authority, is to provide the government with the opportunity to basically enter into this exact conversation that we're having right now. In other words, to allow the government to take custody of the property so that the rules, all of the rules, not just the rules under this particular provision, but the rules of the entire statutory structure, the scheme, can be applied to the 10:21 10:22

given facts and decide, number one, whether it's technically subject to forfeiture, which here, it would be; secondly, whether it is within the spirit of the law to apply it. What is tricky about this situation is, there's no question that Congress intended this authority, this forfeiture authority under this particular provision, to be broader than anything that had ever been passed before. 10:22

THE COURT: I agree with you, but it is broader even if I take into account the intent to generate the proceeds, because as you say in your brief, so let's go back to your supplemental brief, in pages 9 and 10 you make the good point that derived from provision must reach beyond those assets, and then you list four categories of assets, right? 10:22

MR. WELK: Yes.

THE COURT: A, belonging to Farook himself; B, acquired with the intent of supporting, planning, or concealing terrorism; C, involved in, or used or intended to be used to commit terrorism; and D, associated with financing terrorism. 10:23

So even if I require that you show some intent on behalf -- or expectation on behalf of Mr. Farook to generate the asset in question here, that will still be broader than all those four circumstances, correct? 10:23

MR. WELK: Well, it would actually -- if he acquired it with the intent that it be paid when he martyred himself, it would fit into subcategory B because he would have acquired the 10:23

insurance --

THE COURT: Not with the intent of supporting, planning, or concealing terrorism.

MR. WELK: That's correct.

THE COURT: Right. So it would be broader than that. 10:23

MR. WELK: Yes.

THE COURT: It would be with the intent to benefit a third party.

MR. WELK: Yes.

THE COURT: Right? 10:24

MR. WELK: Correct.

THE COURT: So even if I adopt that causal requirement, then it would be broader than the current statutory scheme, say for RICO?

MR. WELK: Yes, that's correct. 10:24

THE COURT: So your point is basically that Congress intended you to be able to seize the asset and then provide some exceptions to it under the innocent beneficiary standard.

MR. WELK: Correct.

THE COURT: So that's the safeguard, right? 10:24

MR. WELK: Absolutely, yes.

THE COURT: In the first instance you can seize anything you want that has any causal connection.

MR. WELK: If it's derived from. And again, what I would -- 10:24

THE COURT: But again, we're just mincing words, because *derived from*, as you understand it, is any causal connection.

MR. WELK: It's a but/for -- I think that may be true, Your Honor. 10:24

THE COURT: But we already went through but/for. But for he committing the terrorist act and him dying ten years later, then there would be -- that would be a derived asset.

MR. WELK: I believe it would be, yes.

THE COURT: And also, it would be for the benefits of 10:24 the victim's insurance policy. That's a but/for causation right there.

MR. WELK: Yes, it is. I guess with respect to that, Your Honor, I think there's two issues there. One, I think Congress always intends when it passes statutes that the 10:25 government is going to use common sense and discretion in deciding what to go after. But setting that aside --

THE COURT: I understand that. I understand that you don't foresee the government ever going after the policy benefits of the victims. I understand that. But that's not 10:25 the question that's presented here. The question is not what you intend to do, but what Congress intended to do by enacting the statute.

MR. WELK: Absolutely.

THE COURT: So if you're telling me that that's what 10:25

Congress intended to do, that they intended for you to seize the assets of the victim's policy benefits.

MR. WELK: I think Congress intended exactly that. I think Congress intended that the government should be entitled to take control over any property that is derived from a terrorist act and then allow that process to play out. Whether it is, in fact, forfeited at the end of the day is based on the statutory scheme of forfeiture and that there are due process protections and constitutional protections that protect the rights of innocent victims of these offenses. 10:25 10:26

THE COURT: Then why do you make the point both in the verified complaint and your supplemental briefing of trying to tie his purchase of the insurance to his planning, right, and basically saying that, as he planned, the proceeds were derived from his terrorist act? 10:26

MR. WELK: Well, I think it's --

THE COURT: What does that have then if you're saying that his intent has nothing to do at all with it, then why do you write it both in the complaint and in your supplemental brief? 10:26

MR. WELK: I'm not sure we're arguing that it has nothing to do with it. I think what we're saying is we don't have to prove that he intended to die a martyr when he acquired the insurance policy.

THE COURT: What is the relevance of him planning 10:27

that or of him acquiring the insurance policy as he was planning the terrorist attack.

MR. WELK: It's relevant as a factual matter on the merits decision because the finder of fact -- we believe that the finder of fact could find, based on the record and based on 10:27 the evidence that we expect to present at trial, we believe that the finder of fact could conclude that he did, in fact, intend to die a martyr when he acquired the insurance policy.

THE COURT: But what relevance is that for whether or not the proceeds get seized or not? 10:27

MR. WELK: I don't think it is relevant, Your Honor.

THE COURT: Why would the -- why would the trier of fact need to find that fact?

MR. WELK: The trier -- it wouldn't need to, but the fact that it might -- for purposes of the complaint, the 10:27 Government is alleging the facts that it intends to prove at trial and that it believes will --

THE COURT: You're telling me his intent is irrelevant.

MR. WELK: His intent -- what he intended to do when 10:28 he bought the policies does not -- that fact is not going to determine whether or not this property is subject to forfeiture or not.

THE COURT: Then his intent in planning and carrying out the attack or expecting that the assets would be derived 10:28

from his terrorist act is irrelevant.

MR. WELK: It's legally irrelevant to the issue of whether there is probable cause to believe that the property is subject to forfeiture.

THE COURT: Is irrelevant of all at a subsequent proceeding. 10:28

MR. WELK: I believe it may be relevant, yes.

THE COURT: How?

MR. WELK: Because it establishes his intent. If he intended at the time he acquired the insurance policies to die a martyr and thereby enrich his mother, that establishes -- that makes it more likely that it's subject to forfeiture factually. That's what he wanted to do. 10:28

THE COURT: Well, it only makes it more likely if it enforces the causal link between one or the other, right? I mean, we're only talking about the causal relationship between him carrying out the terrorist act and the proceeds being available. It's not relevant for any other purpose but for establishing a causal link between the two. 10:28

MR. WELK: But, see, there is a causal link -- the causal link doesn't rely upon his intent of what he -- the causal link here is that the policy benefits were paid as a result of his commission of the terrorist act. 10:29

THE COURT: Fine. You said that. So if that is true, how is his intent relevant at all? 10:29

MR. WELK: His intent in purchasing the policies?

THE COURT: His intent in purchasing the policy would be the idea that he martyred himself and the proceeds would be realized. You're saying that that might be relevant later on for the trier of fact. Why and how is my question. If your position is that his intent is not relevant to determine under Section 981 that the asset was derived from an act of terrorism, how is then his planning, expectation, or intent relevant at all, if not for to establish that it was derived from a terrorist act? 10:29 10:30

MR. WELK: It may not be relevant at all. I guess what I'm suggesting, Your Honor, is it seems to me that it's relevant in terms of the finder of fact making ultimate decisions about whether this property is subject to forfeiture and the underlying culpability of the persons committing the act. 10:30

THE COURT: Yeah, but again, you're telling me that all the trier of fact has to find in order for the asset to be forfeitable is that it was derived from the terrorist act.

MR. WELK: Correct. 10:30

THE COURT: And in that analysis you're telling me two things. One, that his intent is relevant; and two, that his intent is not relevant. So which one is it?

MR. WELK: For purposes of the issuance of the arrest warrant in rem, his intent in acquiring the insurance policies 10:30

is not relevant.

THE COURT: How would that change eventually? What added step needs to be done eventually? The way I understand it is all that's needed for the seizure of the property and then whether or not it's eventually forfeited depends on the exceptions to that, not whether it was derived from. 10:31

MR. WELK: Correct.

THE COURT: So then we're back where we're started. I'm asking you the same question three times.

MR. WELK: I suppose it has no relevance because 10:31 we're in a -- arguably, it has no relevance because the person who committed the underlying act is dead. The question of intent --

THE COURT: That can't eliminate relevance. I mean, that causal connection, if I intend to cause something, my 10:31 intent is relevant to that causation.

MR. WELK: Right. But in the forfeiture context and particularly in the civil forfeiture context, what becomes critically important at the defense stage, when someone is resisting against forfeiture, is the culpability of the 10:31 individual in question. Normally you would -- normally there would be an inquiry in most cases into the culpability of the person who committed the underlying act.

THE COURT: Again, we're talking about different intents. We're talking about the intent to commit the 10:32

terrorist act, which might be undisputed in this case. What I'm talking about is the intent to thereby generate the asset.

MR. WELK: Right. I guess I'm not sure why it matters. Whether he -- I guess the point is, that's not a necessary element of the forfeiture claim that he intended -- 10:32 that he acquired the insurance policy with the intent to martyr himself and thereby enrich his family. That's not a necessary element to establish the forfeiture.

THE COURT: Then why did you write it in your brief and in the complaint? 10:32

MR. WELK: Because the Government believes that -- again, maybe the issue is whether it's relevant as a necessary proof of an element or whether it's relevant in terms of telling the story and presenting the case of what happened here. 10:32

THE COURT: That's why I was confused. Anyway, I'll issue the warrant, but you know what I'm thinking about in terms of I'm not convinced by your argument that his expectation or plan to generate the asset itself as opposed to his intent to commit the terrorist act is sufficient for the 10:33 Government to forfeit the asset.

MR. WELK: I understand.

THE COURT: Very well. Thank you very much.

MR. WELK: If I could, Your Honor, just a couple of housekeeping questions. Once the warrant issues, there is an 10:33

issue, and I think it's a resolvable issue, but I want to raise it with the Court. What normally would happen is upon the issuance of the arrest warrant the Government would actually take custody of the money and the Marshals would hold on to it. As the Court knows, the money has been deposited with the clerk of the court. 10:33

THE COURT: Yes.

MR. WELK: And I believe that it is entirely appropriate that the clerk could be identified as the custodian of the money, but that is something I wanted to clarify with the Court, what the Court's intent was. 10:33

THE COURT: I think that's, in fact, legally correct. The clerk is the current custodian of the proceeds.

MR. WELK: Okay. Then the Government would ask, for purposes of clarity, that once the arrest warrant is issued, if the Court could indicate that it is designating the clerk of the court as the custodian of the property going forward so the Marshals are relieved of that obligation. 10:34

THE COURT: So it would be the same custodian but under different legal authority; is that what you're saying? 10:34

MR. WELK: No. The actual custodian is supposed to be the Government in a civil forfeiture case.

THE COURT: Right.

MR. WELK: But in order to fulfill that, the Marshal's Service would have to actually serve the arrest 10:34

warrant in rem on the clerk and take the money back and hold it in Government custody, which we're perfectly prepared to do, but the Court is allowed under the statute to designate a substitute custodian. So I guess what we would ask is, if it's the Court's intent that the money should stay in the custody of the court clerk, that the clerk be designated in the arrest warrant in rem as a substitute custodian so that that sort of -- 10:34

THE COURT: On behalf of, at this time, the Government, not the insurance company? 10:35

MR. WELK: Correct, yes.

THE COURT: So why don't you draft a proposed order for me and I'll take a look at that.

MR. WELK: Okay. I will do that.

THE COURT: Thank you. 10:35

MR. WELK: Thank you, Your Honor.

(Proceedings concluded)

-o0o-

C E R T I F I C A T E

DOCKET NO. EDCV 16-1129 JGB

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and accurate transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

/S/ Phyllis A. Preston DATED: September 30, 2016

Federal Official Court Reporter

CSR, FCRR